# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CARGILL, INCORPORATED AND INTERNATIONAL FLORA TECHNOLOGIES LTD., <br><br> Plaintiffs, <br><br> v. <br><br> VANTAGE SPECIALTY CHEMICALS, INC., <br><br> Defendant. | C.A. No. _____ <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Cargill, Incorporated ("Cargill") and International Flora Technologies Ltd. (d/b/a FloraTech) ("FloraTech," collectively "Plaintiffs"), bring this action for willful patent infringement against Vantage Specialty Chemicals, Inc. ("Vantage"). Plaintiffs allege as follows:

## NATURE OF ACTION

1. This is an action for infringement of United States Patent No. 11,248,245 ("the '245 patent") under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including § 271(a). Plaintiffs bring this action to enforce their patent rights covering its product line of personal care and cosmetic ingredients derived from jojoba oil.

2. In 2021, Cargill purchased FloraTech. FloraTech, a Cargill company, is headquartered in Phoenix and has a product line focused on personal care and cosmetic ingredients, primarily products derived from jojoba oil. Jojoba oil is an extract from the seeds of the desert jojoba plant. It has long been used as an emollient to help retain the natural moisture present in the skin.

3.     Since 1971, FloraTech has marketed quality botanically-derived ingredients to formulators of cosmetic and personal care products. It is, and has been, an industry leader in the jojoba field with its line of Floraesters® products, due to the superior quality of these products. The superior quality of one such product, Floraesters® 20, is a result of the enzymatic process embodied in the '245 patent.

4.     On information and belief, Vantage has been trying to supply Plaintiffs' customers with a chemically-manufactured copy of its Floraesters® 20 product for years, but the quality and performance of Vantage's product was lacking. Recently, Vantage announced and promoted a new product—Liponate™ Jojoba 20—as an alternative to Floraesters® 20. As shown below, Vantage touts that its Liponate™ Jojoba 20 product is made through an enzymatic process.



Source: Liponate™ Jojoba 20-SS-2020 marketing document, available at
https://www.vantagegrp.com/en-US/Product/Page/a4e8c79c-49f1-431e-ad63-7457543de5e9/Liponate-Jojoba-20

5.     On information and belief, Vantage's manufacturing methods for its Liponate™ Jojoba 20 product infringe one or more of the claims of the '245 patent.

## THE PARTIES

6. Plaintiff Cargill, Incorporated is a privately-owned Delaware corporation with its principal place of business at 15407 McGinty Road West, Wayzata, Minnesota 55391. Cargill is a leading global provider of food, agricultural, beauty, and risk management products and services employing about 155,000 employees.

7. Plaintiff International Flora Technologies Ltd. is a wholly-owned subsidiary of Cargill with its principal place of business at 291 E. El Prado Ct. Chandler, Arizona 85225. FloraTech exclusively develops, manufactures, and markets innovative natural emollients and derivatives for beauty and personal care applications.

8. Upon information and belief, Vantage is a corporation organized and existing under the laws of Delaware with its principal place of business at 1751 Lake Cook Road, Suite 550, Deerfield, Illinois 60015. On information and belief, Vantage may be served through its registered agent for service, The Corporation Trust Company at Corporation Trust Center 1209 Orange Street, Wilmington, Delaware 19801.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over the action under 28 U.S.C. §§ 1331 and 1338(a) because the action concerns a federal question arising under the Patent Laws of the United States, including 35 U.S.C. § 271.

10. This Court has personal jurisdiction over Vantage because, on information and belief, Vantage is a corporation organized and existing under the laws of Delaware, is qualified to do business in Delaware, and has appointed a registered agent for service of process in Delaware. Therefore, Vantage has purposefully availed itself to the privileges of conducting business in Delaware and consented to general jurisdiction in Delaware.

11. In addition, this Court has personal jurisdiction over Vantage because, *inter alia*, Vantage, either directly or through its subsidiaries, agents, and/or affiliates, has purposefully availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being haled into court in this District. On information and belief, Vantage—either directly or through its subsidiaries, agents, and/or affiliates—develops, manufactures, imports, markets, offers to sell, sells, and/or distributes a broad range of personal care and beauty products, including emollients, throughout the Unites States, including in Delaware, and therefore transacts business within Delaware relating to Plaintiffs' claims, and/or has engaged in systematic and continuous business contacts within Delaware.

12. Upon information and belief, Vantage is in the business of, among other things, manufacturing and selling personal care and beauty products, including emollients, either directly or through various operating subsidiaries, agents, affiliates, and/or partners throughout the United States, including in Delaware.

13. Venue is proper in this Court with respect to Vantage pursuant to 28 U.S.C. § 1400(b) because Vantage is a corporation organized and existing under the laws of the State of Delaware.

## THE ASSERTED '245 PATENT

14. On February 15, 2022, the United States Patent and Trademark (USPTO) duly and legally issued the '245 patent, titled "Processes and systems for catalytic manufacture of wax ester derivatives," and naming Jeff Addy, Clay Daly, and James H. Brown as inventors. A true and correct copy of the '245 patent is attached to this complaint as **Exhibit 1**.

15. The '245 patent was assigned to Cargill as part of Cargill's purchase of FloraTech in June 2021.

16. FloraTech has an exclusive license to make, use, and sell under the '245 patent, effective as of February 15, 2022.

17. The '245 patent describes and claims methods for producing a transesterified jojoba wax ester product from a feedstock of jojoba wax esters and hydrogenated jojoba wax esters. The process described and claimed by the '245 patent involves contacting the feedstock with a lipase, and catalytically transesterifying the wax esters in the feedstock with the lipase to form a transesterified product. Notably, an oxidative stability index ("OSI") of the transesterified product may be greater than an OSI of the feedstock.

18. FloraTech sells the transesterified product line, for the benefit of both FloraTech and Cargill, under the trade name Floraesters®.

**ACTS GIVING RISE TO THIS ACTION FOR VANTAGE'S PATENT INFRINGEMENT**

Producing Transesterified Wax Esters

19. A wax ester is formed from the reaction of a fatty acid and a fatty alcohol, which results in the formation of an ester group that links two carbon chains. '245 patent at 1:12-14. Wax esters are found in various animals and plants, including the jojoba plant (*Simmondsia chinensis*). *Id.* at 1:14-16. Wax esters are used in various applications, including cosmetic and personal care products. *Id.* at 1:16-18.

20. Transesterification involves the process of exchanging acyl groups located on each side of an ester group with an acyl group contained in an alcohol group, as illustrated below:



'245 patent at 3:28-36.

21. Conventionally, transesterification of jojoba oil has been done with the use of a chemical catalyst, such as sodium methylate (methoxide) or sodium hydroxide. *See id.* at 3:66-4:25; 7:24-48. Side reactions, however, occur between the catalyst and components of the feedstock and/or reactants during the transesterification process. *Id.* These side reactions create byproducts that reduce the yield of the process and alter the properties of the transesterified product. *Id.*

22. Some of the property changes occur because of damage to the feedstock esters caused by the high temperatures and low pressures required to carry out chemical catalytic transesterification. *Id.* Importantly, the reaction of the chemical catalyst removes or degrades the steryl esters, sterols, tocopherols, hydrocarbons, and volatile ingredients in the jojoba oil. *Id.* The resulting transesterified product may have little or none of these components remaining intact following chemical catalytic transesterification. *Id.*

23. This degradation and/or removal of these components changes the functionality and physical properties of the transesterified product. *Id.* In particular, the degradation and/or removal of the tocopherols and other naturally occurring antioxidants may reduce the OSI of the transesterified product to below the OSI of the original jojoba oil. *Id.* OSI correlates to a product's shelf life. *See id.* at 8:29-33.

FloraTech's Novel Approach to Transesterification

24. In the course of its research and development, FloraTech discovered a novel process that uses enzymes as a catalyst to facilitate the transesterification reaction.

25. On December 19, 2014, FloraTech filed its first patent application with the USPTO for inventions related to its enzymatic process for the transesterification reaction.

26. On June 23, 2016, the USPTO published FloraTech's application for its innovative enzymatic processes and systems as U.S. Publication No. 2016/0177349A1 ("'349 publication"). The '349 publication disclosed, *inter alia*, that "the enzymatic transesterification process takes place at the melting point of the jojoba oil (and any hydrogenated jojoba oil included in the feedstock) under substantially atmospheric pressure. The reaction also proceeds without removing/degrading the tocopherols or volatiles naturally contained in the jojoba oil." '349 publication at [0054]. The '349 publication also disclosed, "[s]urprisingly, however, the OSI of the enzymatically catalyzed transesterified product is greater than that of the feedstock." *Id.* at [0058].

27. FloraTech's innovative enzymatic processes for transesterification result in a transesterified product with increased OSI and accordingly, a longer shelf life.

28. FloraTech's innovations also provide savings in energy and other utilities necessary to manufacture and convey its products.

29. FloraTech's innovations also provide processing efficiencies that provide savings throughout the manufacturing process.

Vantage Copied FloraTech's Enzymatic Process

30. For years, Vantage has been trying to supply Plaintiffs' customers with a chemically-manufactured copy of FloraTech's Floraesters® 20 product, but its quality and performance was lacking. On information and belief, Vantage's manufacturing process for it Liponate™ Jojoba products until recently used a conventional chemical catalyst for transesterification of jojoba oil.

31. Vantage recently introduced and now promotes a new product—Liponate™ Jojoba 20—as an alternative to FloraTech's Floraesters® 20. As shown below, Vantage touts in

7

its marketing materials to customers, attached to this complaint as **Exhibit 2**, that its Liponate™ Jojoba 20 product is made through an enzymatic process:



Source: Liponate™ Jojoba 20-SS-2020 marketing document, available at
https://www.vantagegrp.com/en-US/Product/Page/a4e8c79c-49f1-431e-ad63-7457543de5e9/Liponate-Jojoba-20

32.     Further, as shown below, Vantage also touts in its marketing materials to customers that the enzymatic process results in a jojoba product with higher OSI than the original feedstock:



Source: Liponate™ Jojoba 20-SS-2020 marketing document, available at
https://www.vantagegrp.com/en-US/Product/Page/a4e8c79c-49f1-431e-ad63-7457543de5e9/Liponate-Jojoba-20

8

33. In February 2022, Plaintiffs sent a letter to FloraTech's longstanding customer notifying it that the USPTO recently had issued the '245 patent, covering FloraTech's innovative Floraesters® product line. The letter noted that the '245 patent protects the process that enzymatically converts jojoba oil and hydrogenated jojoba oil into the Floraesters® 20 product that FloraTech supplies.

34. On information and belief, Plaintiffs' customer shared the contents of the February 2022 letter with Vantage. As a result, Vantage has had actual knowledge of the '245 patent as of at least March 2022, and also has had knowledge that its enzymatic process infringes the '245 patent. Despite this knowledge, Vantage continues to manufacture and sell its Liponate™ Jojoba 20 product.

35. At a minimum, Vantage is aware of the '245 patent as of the filing and service of this Complaint.

## COUNT I – INFRINGEMENT OF THE '245 PATENT

36. Plaintiffs hereby incorporate by reference Paragraphs 1-35 of this complaint, as if fully set forth herein.

37. Vantage has directly infringed and continues to directly infringe various process claims of the '245 patent, including at least claim 1, under 35 U.S.C. § 271(a) by making the accused Liponate™ Jojoba 20 product in the United States using each step of the claimed methods.

38. Vantage has made and continues to make its Liponate™ Jojoba 20 product by a process, which on information and belief includes providing a feedstock comprising jojoba wax esters and hydrogenated jojoba wax esters, wherein the amount of hydrogenated jojoba wax esters is 20% to 50% by weight of the feedstock; contacting the feedstock with a lipase; and transesterifying the jojoba wax esters and the hydrogenated jojoba wax esters in the feedstock with

9

the lipase to form a transesterified product; wherein an oxidative stability index (OSI) of the transesterified product is greater than an OSI of the feedstock.

39. For example, as seen in the following excerpt from Vantage's marketing brochure for the accused Liponate™ Jojoba 20 product, Vantage's process starts with a feedstock comprising jojoba wax esters and hydrogenated jojoba wax esters, that goes through an enzymatic inter-esterification (i.e., transesterification), resulting in a transesterified product with an increased oxidative stability index compared to the original feedstock.



Source: Liponate™ Jojoba 20-SS-2020 marketing document, available at
https://www.vantagegrp.com/en-US/Product/Page/a4e8c79c-49f1-431e-ad63-7457543de5e9/Liponate-Jojoba-20

40. Plaintiffs have not granted, and Vantage has not requested, a license or permission to use the '245 patent.

41. On information and belief, Vantage has been willfully infringing the '245 patent since at least on or about March 2022 after it learned of the contents of the February 2022 letter from Plaintiffs to their customer identifying the '245 patent and its patented process. On further information and belief, Vantage has no good faith defense to Plaintiffs' infringement allegations, yet deliberately and wantonly continues its infringement.

42. On information and belief, Plaintiffs are not aware of any other manufacturers of jojoba oil or jojoba wax using their novel enzymatic process beyond those set forth herein. Accordingly, Vantage's actions have directly and proximately impaired Plaintiffs' business efforts, have irreparably harmed Plaintiffs and will continue to irreparably harm Plaintiffs unless and until they are permanently enjoined.

43. By its actions, Vantage's infringement of the '245 patent has damaged, and continues to damage, Plaintiffs in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that Plaintiffs would have made but for Vantage's infringing acts.

44. This is an exceptional case. Plaintiffs are entitled to attorneys' fees and costs under 35 U.S.C. § 285 as a result of the infringement of the '245 patent by Vantage.

## **DEMAND FOR JURY TRIAL**

45. Plaintiffs hereby demand trial by jury on all claims and issues so triable.

## **PRAYER FOR RELIEF**

46. Wherefore, Plaintiffs respectfully request that this Court enter judgment against Vantage as follows:

    A. That the asserted claims of the '245 patent have been infringed by Vantage;

    B. An award of all of Vantage's sales of products found to infringe, i.e., lost profits;

C. An award of compensatory damages as a result of Vantage's infringement of the '245 patent, together with interest, including pre-judgment and post-judgment interest, costs, and in no event less than a reasonable royalty;

D. An accounting to determine the damages to be awarded to Plaintiffs as a result of Vantage's infringement, including an accounting for infringing sales not presented at trial and an award of additional damages for any such infringing sales;

E. That Vantage's infringement of the '245 patent has been willful;

F. An award of all other damages permitted by 35 U.S.C. § 284, including increased damages up to three times the amount of compensatory damages found;

G. A permanent injunction that requires Vantage, its officers, directors, employees, relations and successors in interest to cease and desist from (1) infringing the '245 patent and (2) making, using, selling, offering for sale and/or importing the accused Liponate™ Jojoba 20 product;

H. That this case is exceptional under 35 U.S.C. § 285 and that Plaintiffs are awarded their attorneys' fees; and

I. Such other relief, including other monetary and equitable relief, as this Court deems just and proper.

Dated: July 26, 2022                    FISH & RICHARDSON P.C.

                                              By:   */s/ Robert M. Oakes*
                                                     Robert M. Oakes (#5217)
                                                     Taylor M. Reeves (#6900)
                                                     222 Delaware Avenue, 17th Floor
                                                     Wilmington, DE 19801
                                                     Telephone: (302) 652-5070
                                                     oakes@fr.com
                                                     reeves@fr.com

                                                     Ahmed J. Davis
                                                     Joshua Rosefelt
                                                     FISH & RICHARDSON P.C.
                                                     1000 Maine Avenue, S.W.
                                                     Suite 1000
                                                     Washington, DC 20024
                                                     Telephone: (202) 783-5070
                                                     davis@fr.com
                                                     rosefelt@fr.com

                                                     Elizabeth Flanagan (#5891)
                                                     Brianna Chamberlin
                                                     FISH & RICHARDSON P.C.
                                                     3200 RBC Plaza
                                                     60 South Sixth Street
                                                     Minneapolis, MN 55402
                                                     Telephone: (612) 335-5070
                                                     betsy.flanagan@fr.com
                                                     chamberlin@fr.com

                                                     **ATTORNEYS FOR PLAINTIFF CARGILL, INCORPORATED AND INTERNATIONAL FLORA TECHNOLOGIES LTD.**